137 N.J. Super. 476 (1975)
349 A.2d 552
ELIZABETH C. WERTLAKE, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
PAUL T. WERTLAKE, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1975.
Decided December 2, 1975.
*478 Before Judges FRITZ, SEIDMAN and MILMED.
Mr. Kenneth Wanio argued the cause for plaintiff-appellant and cross-respondent (Messrs. Benenson & McLaughlin, attorneys).
Mr. Edward S. Snyder argued the cause for defendant respondent and cross-appellant (Messrs. Blaustein & Snyder, attorneys).
The opinion of the court was delivered by SEIDMAN, J.A.D.
Elizabeth C. Wertlake was divorced from Paul T. Wertlake on the ground of the latter's adultery, by judgment entered December 16, 1971. Applications were thereafter made by the parties for the enforcement and modification of a property settlement agreement annexed to the judgment. Mrs. Wertlake appeals from the whole of the order entered on June 5, 1974 after a plenary hearing, which, among other things, (1) "set aside in its entirety" the property settlement agreement, (2) made provision for the college education of the three children of the parties *479 and the support and maintenance of the two younger ones, (3) allowed plaintiff support for a period of six months from July 1, 1974, in the amount of $75 a week, and (4) declared defendant to be responsible for the full alimony under the agreement through June 30, 1974, less the alimony "for the seven month period of September 1, 1972, through March 31, 1974, while plaintiff was cohabiting with other men," and the sum of $3660 representing debts which defendant claimed he paid on behalf of plaintiff.
Dr. Wertlake[1] appeals from an earlier order, dated April 23, 1974, declaring invalid and unenforceable "the portion of the Final Judgment [sic] providing for arbitration."

I
We address ourselves first to the issue of whether the entire property settlement agreement should have been set aside. We conclude that it should not.
Following the plenary hearing the trial judge issued a letter opinion in which he said, in part:
* * * I find that to enforce the Property Settlement Agreement of December 13, 1971, would create such a hardship [great hardship or manifest injustice] upon the defendant and, I further find, that certain portions of the Agreement were unfair and unjust at their inception (paragraph one re the joint income tax return and paragraph ten re relinquishment of assets). See Mac Fadden v. Mac Fadden 49 N.J. Super. 356 (App. Div. 1958); Fike v. Fike, 3 N.J. Misc. 485, 128 A. 849 (Ch. 1925), affirmed 99 N.J. Eq. 24 (E. & A. 1926); and Edelman v. Edelman, 124 N.J. Super. 198 (Ch. 1973). I will, therefore, set aside the Agreement in its entirety * * *.
The record is devoid of any motion or other application by defendant assailing the agreement itself. Initially, he sought to terminate the alimony because of the "`de facto' marriage of the plaintiff." He moved later to reduce the *480 alimony and support payments because of his "substantial decrease in earnings." While other matters were also included in the various motions, none pertained to any alleged unfairness or unjustness of the agreement.
The agreement is a detailed one, clearly evidencing that it was reached only after extensive negotiations between the parties and their attorneys. It comprehensively dealt with support of the wife (to be discussed in more detail hereinafter) and their children; the furnishing of hospital and medical insurance and the maintenance by the husband of disability insurance and substantial life insurance; provision for the college education of the children; a formula for the annual adjustment of support and alimony based upon the consumer price index established by the Federal Bureau of Labor Statistics; relinquishment by the husband of all personal property except for items listed in an attached schedule; filing of income tax returns and the taking of exemptions therein, and an additional allowance to the wife, not to exceed $2500, if the husband remarried and filed a joint tax return; custody of the children and visitation rights; indemnification of the husband against debts or obligations incurred by the wife; arbitration of "[a]ny financial claim, dispute or misunderstanding arising out of or in connection with this agreement * * *," and an undertaking by the husband to make a will leaving not less than one half of his estate to the children.
Paragraph 23 of the agreement states:
Both the legal and practical effect of this agreement in each and every respect has been fully explained to both parties by their respective counsel. The parties acknowledge that it is a fair agreement and is not the result of any fraud, duress or undue influence exercised by either party upon the other or by any other person or persons upon either of them, and they further agree that this agreement contains the entire understanding of the parties. * * *
It is noteworthy that the trial judge here also presided at the divorce hearing and signed the judgment, which contained a statement "that the property settlement agreement *481 entered into between the parties on December 13, 1971, and annexed hereto, is approved and made a part of the judgment."
Although defendant conceded below that when questioned about the agreement at the divorce hearing he said that he had read it, he understood it, he thought it was fair and he was satisfied with it after discussion with counsel, he said, with respect to "the clause as to the $2500 per year,"[2] that "I felt that at the time and at present that that was not a fair clause," "I felt * * * that in order to have a divorce I had no choice but to sign the agreement." He stated, further, that his accountants informed him that because of the difficulties the provision "was for all intents and purposes not a practical accomplishable thing."
The matter of the "relinquishment of assets"[3] was elicited during cross-examination of defendant on his understanding of and concurrence with the terms of the agreement. It produced this gratuitous comment by the trial judge:
I'm wondering if I shouldn't appoint a guardian for him at this stage and proceed to try and set the agreement aside, as being completely impossible of performance.
We see no justification whatever in the record for the trial judge's setting aside the agreement. Accepting for *482 the moment his concept that the two provisions referred to above were unfair and unjust  although we find no support therefor in the record  the disposition of defendant's assets under paragraph 10 is not in dispute here. As for defendant's obligation to pay an increased amount dependent upon any tax saving resulting from his filing a joint income tax return instead of a return as a single person, the record discloses only defendant's hearsay remark about difficulties in computing the amount to which plaintiff might be entitled. Moreover, the trial judge made no specific finding that the enforcement of this provision would be attended with such great hardship or manifest injustice that the court would refuse its aid. Cf. Schiff v. Schiff, 116 N.J. Super. 546, 561 (App. Div. 1971), certif. den. 60 N.J. 139 (1972). But even if such relief was warranted in that regard, it could have been granted without disturbing the other provisions.
As we have said, the agreement was the negotiated product of the parties. Neither party asserts that it was procured unfairly or by fraud or falsehood, or that it was wholly unconscionable when made. There was no duress attendant upon the execution of the agreement merely because defendant wanted to be divorced from plaintiff, and, according to his testimony, he was told by her attorney that there would be no divorce unless the controverted clause was contained in the agreement. We observe that at one point in the hearing on the motions, when plaintiff's counsel indicated he would not pursue further his interrogation of his client with respect to the agreement, "[a]s long as the Court has the feeling that the parties finally arrived at a fair agreement," the trial judge responded, "They did, They signed it." Moreover, the trial judge had approved the terms of the agreement. He did not find them unjust or inequitable in any respect. Cf. Skillman v. Skillman, 136 N.J. Super. 348, 354 (App. Div. 1975).
We accordingly reverse so much of the order of June 5, 1974 as sets aside the entire property settlement agreement. *483 Since, for other reasons which will appear later herein, the cause must be remanded for further proceedings, defendant may seek at that time to establish by appropriate proofs, if he can that the pertinent clause of paragraph 10 should not be enforced.

II
On the issues of whether plaintiff was entitled to specific performance of the agreement, or whether, as defendant contended, its terms should be modified because of his changed financial circumstances, the trial judge made these findings of fact: (1) as of July 1, 1974,[4] defendant's income would be reduced from approximately $134,000 a year (at the time of the agreement and through June 1974) to approximately $41,000 a year; (2) defendant was one of the leading pathologists in the country; (3) his employment at St. Barnabas Hospital was unique and he did not voluntarily reduce his income to spite his wife; (4) defendant is heavily indebted to the Internal Revenue Service, and (5) defendant "sees no income from Applied Bioscience, a corporation in which he is involved."
The conclusion reached was that enforcement of the agreement would create great hardship and manifest injustice. Defendant's responsibility for the college expenses of the children was continued, but no additional support was provided for the eldest child, who was no longer living at home. Defendant was ordered to pay the sum of $350 a month for the support of each of the other two children. The trial judge, having found that plaintiff was able to work, directed that she should receive no alimony, but for a period of six months to allow her to obtain employment defendant would pay her $75 a week.
*484 In deciding to withhold enforcement of the agreement because of hardship, the trial judge quoted excerpts from Schiff v. Schiff, supra, 116 N.J. Super. at 560, to the effect that the remedy of specific performance was discretionary, resting upon equitable principles; that the relief must not be harsh or oppressive, and that the claim must be equitable.
Schiff, however, sets forth other equally pertinent principles. While a showing of changed circumstances may warrant the court in modifying an agreement between husband and wife if the changes are such as to convince the court that to enforce the agreement would be unconscionable, "[a] far greater showing of changed circumstances must be made before the court can modify a separation agreement than need be shown to warrant the court amending an order for alimony or support." 116 N.J. Super. at 561. Furthermore, subsequent events which should have been in contemplation of the parties as possible contingencies when they entered into the contract will not excuse performance. Id. See also, Skillman v. Skillman, supra, at 351; Weiner v. Weiner, 120 N.J. Super. 36, 40 (Ch. Div. 1972).
The agreement here obligated defendant to pay to his wife as alimony the sum of $17,000 a year in equal monthly installments until her death or remarriage or his death, whichever should occur first. Defendant represented therein that his then annual gross earned income was $100,000. Plaintiff represented that she had no income. In addition, defendant bound himself to pay, for the support and maintenance of their three children, the annual sum of $4,333.33, also in equal monthly installments. Other provisions, necessitating the expenditure of money, were outlined earlier herein.
When the agreement was signed in 1971 defendant was director of pathology at St. Barnabas Medical Center, Livingston. In addition to his annual salary of $100,000 he participated in a profit-sharing plan. His contract expired *485 subsequent to the divorce. He then chose to accept employment as chief of pathology at the Veterans Administration Hospital in Sepulveda, California, at an annual salary of $36,000, commencing June 1974. He also expected to receive an additional $4000 a year for teaching at U.C.L.A. By his own admission defendant could have obtained other employment as a staff pathologist at a higher salary but, he said, he did not feel he was suited for such a position, having done administrative work for a number of years.
Thus, the issue squarely presented to the trial judge was whether, in the totality of the circumstances, defendant had made a sufficient showing of changed circumstances so that enforcement of the financial provisions of the agreement would be unconscionable.
We pause at the outset to note our refusal to consider plaintiff's argument that the trial judge erred "in making an anticipatory order," in that the alleged changed circumstances had not yet occurred. The issue was not raised below. Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973).
Of more concern to us is the trial judge's failure to indicate what consideration, if any, he gave to whether the imminent diminution in defendant's earnings was an event which was or reasonably should have been in the contemplation of the parties. Moreover, we do not have the benefit of the reasoning which led the trial judge to his conclusion that enforcement of the agreement, or specific portions of it, would be unconscionable.
It is, of course, elementary that in every contested action tried upon the facts without a jury, the judge is required to find the facts specially and state separately his conclusion of law thereon. R. 1:7-4. Findings which fail to permit a meaningful review of the evidence relied upon to justify the decision do not satisfy the rule. In re N., 96 N.J. Super. 415, 426 (App. Div. 1967). The findings here do not measure up to the requisite standard, particularly insofar as they fail to deal explicitly with an issue on *486 which the outcome of the case might well hinge  that is, the foreseeability of the diminished earnings. Additionally, we have no discussion of the factors on the basis of which the trial judge made his substituted allowances. Cf. Franzoni v. Franzoni, 60 N.J. Super. 519, 525 (App. Div. 1960).
Ordinarily, we would remand for additional findings and conclusions, but the judge who heard the case has retired. In the circumstances we have no choice but to vacate the second, third and fourth paragraphs of the order of June 5, 1974 and to remand the matter for a new plenary hearing on the issue of defendant's entitlement to relief because of his alleged changed financial circumstances.

III
We turn now to that portion of the order under review which required defendant to pay "the full alimony under the Property Settlement Agreement through June 30, 1974," less certain deductions, one of which was "$9,916.59 representing the alimony for the seven month period of September 1, 1972, through March 31, 1974 [sic], while plaintiff was cohabiting with other men." The latter proviso implemented the trial judge's finding that "plaintiff lived with two men (at different times) engaging in sexual relations with them and having financial dealings with them."
Plaintiff argues that the facts did not support this finding. We disagree. It could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole. State v. Johnson, 42 N.J. 146, 162 (1964).
However, it appears that the trial judge was evidently of the view that plaintiff's illicit relationship with other men was in itself cause to suspend the alimony payments for the period of the cohabitation.
*487 A similar problem was before us recently in Garlinger v. Garlinger, 137 N.J. Super. 56 (App. Div. 1975). What we said there applies to the present case:
* * * [W]here a marriage is dissolved by judgment of divorce, and provision is made for alimony, either by order of the court or by agreement of the parties, the subsequent unchastity of the wife is not by itself cause for terminating or reducing the alimony. * * *
But we do not mean that such unchastity may have no effect at all upon the former husband's obligation to continue the alimony payments. It is unquestionably a factor to be considered in a proper case, not as misconduct per se, but to the extent that it may bear upon the amount of, and the necessity for, the allowance. * * *
* * * We have no doubt, however, that where a former wife chooses to cohabit with a paramour, whether in her abode or his, or otherwise consorts with him, the issue may well arise whether in the circumstances, she has further need for the alimony. If it is shown that the wife is being supported in whole or in part by a paramour, the former husband may come into court for a determination of whether the alimony should be terminated or reduced. Similarly, if the paramour resides in the wife's home without contributing anything toward the purchase of food or the payment of normal household bills, then there may be a reasonable inference that the wife's alimony is being used, at least in part, for the benefit of the paramour, in which case it could be argued with force that the amount thereof should be modified accordingly. In short, the inquiry is whether the former wife's illicit relationship with another man, apart from the misconduct per se, has produced a change of circumstances sufficient to entitle the former husband to relief. [at 63]
Beyond his finding of the relationship which existed between plaintiff and the two men and his cancellation of the alimony for the duration thereof, the trial judge made no determination of what effect, if any, the relationship had upon plaintiff's further need for alimony. The matter should have been thoroughly explored and appropriate findings made. It was not done; consequently, this issue, too, must be remanded for a further hearing, followed by appropriate findings and conclusions. The pertinent portions of paragraph 5 of the order of June 5, 1974 are vacated. (We except so much thereof as grants defendant a deduction of $3660 "representing the debts that defendant paid on *488 plaintiff's behalf in accordance with paragraphs 3 and 5 of his Amended Notice of Motion.") Our ruling makes it unnecessary for us to consider plaintiff's contention that the trial judge erred in failing "to take testimony as to the economic arrangements of appellant's residence with Dr. Kashmiry and Mr. Thies."

IV
We can dispose summarily of the other points raised by plaintiff.
She advances the argument that the trial judge erred in not granting her request that defendant be required to post a bond to assure compliance with the agreement. This is a matter within the discretion of the court. McDonald v. McDonald, 6 N.J. Super. 11, 15 (App. Div. 1949). We perceive no mistaken exercise of that discretion here. However, we recognize that a different situation may exist as the result of the plenary hearing; consequently, plaintiff may renew her request at that time.
Plaintiff contends, further, that (1) the trial judge erred in crediting defendant for payments made to various creditors (see paragraph 5 of order under review), (2) defendant is barred from asserting credit on account of moneys paid for an automobile, and (3) proceeds of mutual funds in the amount of $17,000 should have been awarded to her. We have carefully reviewed the record and find no merit in any of these contentions.

V
Defendant cross-appeals from the court's order of April 23, 1974 declaring "that portion of the Final Judgment [sic] providing for arbitration"[5] invalid and unenforceable. *489 He argues that since the purpose of a marital agreement is to prevent the airing of marital troubles in court, arbitration should not be discouraged as to matters of support. In a rare showing of unity, plaintiff agrees with her former husband's contention that the trial judge erred in invalidating the arbitration provision.
In his opinion on the subject, reported at 127 N.J. Super. 595 (Ch. Div. 1974), the trial judge expressed the view that "arbitration is ill adapted for the delicate balancing of the factors composing the best interest of the child in custody and visitation questions," and that the power to make orders touching the care and custody of children is inherent in the courts and may not be abrogated by statute. He ruled that such matters are not subject to arbitration. We assume further, although the opinion lacks clarity in this respect, that he also held that the court's power to deal with questions relating to alimony could not be impaired by such arbitration provision.
We are at a loss to know how the issue arose and what prompted the opinion and the resultant order. Our careful search of the record discloses no demand for arbitration either by motion or otherwise. The opinion states that defendant asked for arbitration in answer to plaintiff's cross-motion for increased support and alimony. Our inquiry of defendant's present attorney produced the response that the question was first raised at an oral argument. This puzzles us because we were not furnished a transcript thereof and, moreover, attached to defendant's notice of appeal is a certification that "there was no oral argument and, therefore, no transcripts to be requested."
*490 We are far from satisfied that the arbitration issue was raised below, if at all, in such manner as to have necessitated a formal resolution thereof by the trial judge. Further, if there was a request for arbitration, it came too late and should have been denied on that ground alone. Defendant's motion, returnable December 7, 1973, included at least one matter  a claimed credit against alimony and support  which fell within the scope of the arbitration clause, yet it was not invoked at that time, defendant apparently being content to submit the dispute to the court for resolution. His supplemental motion, returnable the same day as plaintiff's cross-motion, was also silent with respect to arbitration.
Additionally, it seems strange that the question of arbitration should have first arisen ostensibly in response to the cross-motion, in view of the fact that the increase in alimony and support was sought by plaintiff "as stated in paragraph 9" of the agreement, i.e., the annual adjustment based on the consumer price index, which would have required no more than relatively simple mathematical computations.
In short, we simply cannot tell from the record what specific issue or issues, if any, defendant desired to arbitrate, or whether he had waived the arbitration provision, or whether the relief sought by plaintiff in her cross-motion was properly within the scope of the provision. More importantly, we detect no real controversy between the parties on the question. It does not appear that there was a definite assertion below by defendant of a legal right to arbitrate a particular dispute (see N.J.S.A. 2A:24-1 et seq.) and a positive denial thereof by plaintiff. Actually, as noted above, plaintiff sides with her former husband on the issue, and there is no indication she took a contrary position below. There is thus grave doubt of the existence then or now of a dispute appropriate and ready for decision. Cf. Sperry & Hutchinson Co. v. Margetts, 25 N.J. Super. 568, 577 (App. Div. 1953), aff'd 15 N.J. 203 (1954).
*491 For the foregoing reasons, we set aside the order declaring the arbitration clause invalid and unenforceable. We express neither approval nor disapproval of the reasoning and conclusions of the judge below as set forth in his opinion. We choose to leave for another day the important issue of the enforceability of an arbitration provision in a property settlement agreement between husband and wife incident to a suit for divorce.

VI
To summarize:
The order dated April 23, 1974 is set aside.
So much of the order dated June 5, 1974 as set aside in its entirety the property settlement agreement of December 13, 1971 is reversed.
Paragraphs 2, 3 and 4 of said order are reversed. The issues of whether the said agreement should be modified because of defendant's changed financial circumstances and whether plaintiff is entitled to have the agreement enforced are remanded for a further hearing consistent with the foregoing.
Except for the provision therein allowing defendant credit for the sum of $3660, which we affirm, the remainder of paragraph 5 of said order is reversed and the issues involved therein are remanded for a further hearing consistent with the foregoing.
In all other respects, the order dated June 5, 1974, is affirmed.
We do not retain jurisdiction.
Each party shall bear his or her own costs and counsel fees on this appeal.
NOTES
[1] Dr. Wertlake is a physician who is board certified in anatomic and clinical pathology.
[2] Paragraph 1 of the property settlement agreement provided in part as follows:

* * * In the event that in 1972 or thereafter the husband shall have remarried and be eligible to file a federal joint income tax return, these sums shall be increased by a sum, annually determined, equal to one-half of the difference between the husband's net tax for federal income purposes as if he filed as a single person, and the tax as if he filed a joint return as a married person, up to the total sum of $2500.00.
[3] This refers to paragraph 10 of the agreement, in which defendant agreed "to relinquish any and all personal property owned by him, his wife or the parties jointly, wherever situated, with the exception of a living room desk, an organ, and wooden filing cabinets and contents."
[4] The hearing took place on May 22 and 23, 1974, and the trial judge's letter opinion is dated May 27, 1974.
[5] Paragraph 24 of the property settlement agreement provided that:

Any financial claim, dispute or misunderstanding arising out of or in connection with this Agreement, and in particular modifications required because of the husband's self-employment, shall, as a condition precedent to recourse to the courts, be arbitrable and be arbitrated by a single arbitrator chosen by and operating under the rules of American Arbitration Association, and his decision shall be binding and conclusive upon the parties, and shall be rendered in such form that a judgment may be entered therein in any Court having jurisdiction thereof.