814 A.2d 1138 (2003)
357 N.J. Super. 231
Lisa G. ORDUKAYA, Plaintiff-Appellant,
v.
Paris H. BROWN, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted December 4, 2002.
Decided January 31, 2003.
D'Arrigo & D'Arrigo, attorneys for appellant (JoAnn C. D'Arrigo, on the brief).
Frank J. Hoerst, III, attorney for respondent.
Before Judges CONLEY, CARCHMAN and PARRILLO.
The opinion of the court was delivered by CARCHMAN, J.A.D.
Plaintiff Lisa G. Ordukaya appeals from orders of the Family Part: 1) denying her motion to modify a child support award *1139 arising from a negotiated property settlement entered into between plaintiff and defendant Paris H. Brown; and 2) denying her motion to set aside the property settlement agreement incorporated in the judgment of divorce. In both instances, the motion judge denied the respective applications without a plenary hearing. At the original divorce hearing, the parties submitted a property settlement agreement incorporating child support provisions that were below child support guidelines. Neither party nor the judge prepared a child support guidelines worksheet nor was any "good cause" determined to support deviation from the guidelines as required by subpart 22 of Appendix IX-A. Pressler Current N.J. Court Rules, Appendix IX-A "Considerations in Use of Child Support Guidelines," subpart 22 (2002). We hold that under the facts presented here, the failure to comply with the guidelines mandates a reversal and remand. We reverse the order of May 4, 2001, denying a modification of child support and remand for a plenary hearing as to this issue. As to the property settlement agreement, we affirm the order of July 13, 2001, denying such relief.

I.
After residing together for thirteen years and parenting three children, the parties were married on March 6, 1996. In August 1996, a fourth child was born, and the parties continued to reside together until May 2000, when plaintiff and the children left the marital home. According to plaintiff's complaint, a root cause of the separation was defendant's abusive conduct towards plaintiff.
Plaintiff filed a pro se divorce complaint in May 2000, and sought, among other things, a dissolution of the marriage, custody and a "[m]utually agreed upon" amount of $800 per month child support, as well as medical insurance for the children. When later challenging that amount, plaintiff explained that she requested $800 for child support because she "was told by [defendant] that he would pay no more than $800 in child support after the divorce and I did what I was told."
Defendant retained an attorney who, according to that attorney, filed an answer and then drafted a Final Judgement of Divorce and settlement agreement, based on "a handwritten, but sketched out, proposal for preparation of a final judgment of divorce" given to him by defendant. Defendant represented that the notes were based on discussions between the parties. The attorney, through defendant, invited plaintiff to review the agreement at the attorney's office.
Plaintiff asserted that she "was told [she] had to sign the documents prepared and ... had no part in negotiating the settlement." She also stated that she was not able to fully review the divorce agreement as she could not leave the office with it, and she was never told that she had the right to have an attorney look at the papers. This is contradicted by a certification from the attorney's secretary who advised plaintiff that defendant's attorney could not give her any legal advice, that "she would be best served by obtaining her own counsel if she had any questions," and that "she would have more than ample opportunity to take the document to an attorney for review."
At the divorce hearing, defendant's attorney briefly reviewed the provisions of the agreement entered into between plaintiff and defendant. Plaintiff was not represented by counsel at the hearing or at the time of negotiation of the agreement. The attorney represented that both parties waived their right to alimony as they knew their "financial arrangement" and had "exchanged all of the documentation that was *1140 necessary." He further noted that because defendant was paying $800 in child support, he would be entitled to declare the children as exemptions on his federal and state income tax returns. No explanation was forthcoming as to the computations resulting in the $800 per month child support award, nor was a child support guidelines worksheet prepared. See R. 5:6A.
The judge then questioned plaintiff, under oath:
BY THE COURT:
Q. Okay. With nothing further, Mrs. Brown, you did not have an attorney review this document on your behalf?
A. No.
Q. You have just listened to [the attorney], in a rather replete fashion, go over all of the terms that are embodied in this divorce action, the custody of the children, moving to out of state, all of those issues. First, is there anything about what has been said here today, that you do not understand fully?
A. No, I understand.
Q. And you understand also that you do not have to sign this agreement, you do not have to agree to those terms, you do not have to agree, frankly, to any terms. You could have your proofs presented, and it would be my responsibility to make a decision on all of these issues.
A. Right.
Q. Does this agreement encompass, or deal with, or dispose of all of the issues of your marriage, and all of the debts, all of the property that was acquired, children's issues? Is there anything left unsaid?
A. No.
Q. Undealt with in the agreement?
A. No.
Q. All right. And are you willing to be bound by this agreement? Do you understand that this would be enforceable by you against Mr. Brown, and enforceable against you by him should you or he violate any of the terms or provisions? Do you understand that?
A. Yes, I understand that.
Q. And you agree to be bound? Is it in your judgment fair and reasonable, the stipulations or agreements that you've made?
A. Yes.
THE COURT: Anything further, Mr.
COUNSEL: I was just going to ask my last question. Mrs. Brown, I've said it once, I'm going to say it one last time. I've told you hundreds of times that I can't provide you or give you any legal advice. Is that correct?
MRS. BROWN: That's true.
COUNSEL: And you're satisfied, and understand the reason why.
MRS. BROWN: Yes.
THE COURT: All right. Very well. Although the court makes no findings as to the fairness or the equitableness of this agreement which has been reduced to a writing, and is now spread on the record, I am satisfied, however, that Paris H. Brown, and Lisa Gaye Brown, although Mrs. Brown not having any legal representation, is satisfied with the agreement. It's fair as to her in her judgment, and she's willing to be bound, and likewise, Mr. Brown is. Accordingly, it may be included in the final judgment of divorce should one be entered.
No inquiry was made by the judge as to the specific amount of child support nor was any reference made to the child support guidelines. Plaintiff later explained *1141 that she testified that she understood she had the right to an attorney because she could not afford an attorney and was not aware of legal services for the indigent. Defendant told her, and she believed, that she could not receive child support until after the divorce, and defendant did not voluntarily support them during this time.
Defendant asserted that plaintiff was agreeable to the terms of the divorce agreement as she was anxious to marry her current husband. She did so fifteen days after the divorce was finalized. Plaintiff also insisted on moving the children to Elkton, Maryland where her boyfriend lived, and although defendant did not want the children to "leave the jurisdiction," he later agreed to do so. Plaintiff noted that Elkton, Maryland is only seventeen miles away from defendant's home, and she wanted the divorce quickly "to get away from" defendant and to receive "financial assistance in caring for the kids."
The Final Judgment provided that the parties would retain the property they had already divided "to their mutual satisfaction," would be responsible for their own medical and car insurance as well as their own bills incurred prior to the agreement, were released from all suits in which either party was involved, and would have joint custody of the children with plaintiff having residential custody in Elkton, Maryland. In addition, defendant would have "free and liberal visitation" with the children, defendant would maintain the children on his current medical insurance program, and plaintiff would resume her maiden name. Although plaintiff subsequently challenged the provisions of the agreement dealing with equitable distribution, we focus on those provisions relevant to child support.
We quote the relevant provisions of the agreement.
I. State and Federal Tax Returns It is agreed by and between Plaintiff and Defendant that the defendant/father shall be entitled to claim all four (4) children born of the marriage as deductions[1] on both the State and Federal Income Tax Returns. The plaintiff/wife agrees that she will execute any and all documents necessary and provided to her by defendant or defendant's accountant for purposes of executing same so that defendant/father shall be entitled to take all four (4) children as deductions on both State and Federal Tax returns.
....
O. Child SupportThe parties have each had the opportunity to review their respective incomes and have agreed that defendant/father shall pay to plaintiff/mother $800 per month payable at the rate of $186 per week (4.3 weeks in a month) by way of payroll deduction. Defendant/father is employed with Kimberly Clark located at Front Street and Avenue of the State, Chester, Pennsylvania. Defendant/father agrees that he shall pay the $186 per week directly to the plaintiff/wife until such time as the wage execution becomes effective. This payment shall commence with Friday, August 4, 2000.
....
T. StipulationsThese stipulations contain the entire understanding of the parties, and there are no representations, warranties, covenants or undertakings other than those expressly set forth herein.
*1142 In addition to these provisions, plaintiff waived any claim for support and agreed to an "anti-Lepis" provision precluding any claim for change in circumstances supporting a claim for alimony. No such language was agreed to regarding child support.
Approximately eight months after the entry of judgment, plaintiff filed a pro se motion to amend the judgment claiming that she could not support her children on $800 per month and someone in the probation office, who was "shocked at the meager amount" of child support she received, told her about the Child Support Guidelines. She also sought relief regarding the tax exemptions.
In response to plaintiff's motion, defendant filed a cross-motion seeking custody of the children "[i]f the court would modify the child support." He asserted that the child support amount should not be increased as plaintiff had insisted on the amount so that she could obtain the divorce and remarry, and his annual salary had decreased from $63,000 to $52,000, due to his employer; he was running a deficit in spending.
At the argument on the motion, defendant conceded that $800 per month does not conform to the guidelines. The judge noted that "there would be a high likelihood that a court would have approved [plaintiff's] move during a Holder[2] hearing;" but the judge denied plaintiff's request stating:
I acknowledge that if we run a child support guidelines calculation, that child support would be up substantially higher than the parties negotiated. I do not have the benefit of the transcript as to what was discussed with [the trial judge], and I acknowledge that there is a violation of the rules, and that there is no guidelines calculation attached.
However, this is a negotiated agreement. It's been eight months since the parties negotiated it, and I find that there are, as I've indicated, competing interests. It seems to me that there's nothing to suggest, other than that the plaintiff was pro se, that there was any fraud or misrepresentation here, and that she didn't know what she was doing when she was negotiating. I recognize that there are many reasons people negotiate particular points in either separation agreements, or uncontested final judgments of divorce, and I acknowledge that it's pretty clear that she was married shortly after this divorce, and relocated with the consent of the defendant, to Maryland.
When I look to the competing interests ofbest interest of the child, and the parties' negotiations, frankly, I take the position, usually, and I believe it's law, that once the parties negotiate an issue, and absent a finding of fraud or misrepresentation, or the like, that the parties should be bound by that agreement, recognizing that there is a difference in child support in that it isn't forever. But it is for some period of time, and I think the parties have the right to be able to rely on what they've negotiated, and I find that what is appropriate is that with regards to child support, it's reviewable once there is a material change in circumstances, or when we get to the three-year review.
In this case, we don't have a three-year review because it's only been eight months since these parties were divorced; but I also find that there is no material change in circumstances in the eight months. And I think it would be inequitable to permit the plaintiff to *1143 come in and open up a portion of a final judgment of divorce that she negotiated eight months ago, absent some showing of either a change of circumstances, or fraud, misrepresentation, or the like.
Accordingly, I'm going to deny her application with regards to an increase in child support at this time, and I think thatwould suggest that the same results should occur with regards to the tax deductions. There's nothing to suggest that the parties didn't negotiate it. There's nothing in the final judgment that would suggest that it was for one year. Accordingly, I find no basis in the request to modify the tax exemptions.
Plaintiff sought reconsideration of the denial of her application for an increase in child support and in the alternative, sought to vacate the entire settlement pursuant to R. 4:50-1.
Both plaintiff and defendant submitted financial information and documentation on reconsideration. Defendant submitted a Case Information Statement, his 2000 State and Federal W-2 wage statements, his 2000 Federal Income Tax Return, and several earnings statements. Defendant's 2000 Federal Income Tax Return indicated he earned $52,400, claimed all four children as exemptions, and itemized deductions of $14,800. According to plaintiff's Federal Income Tax Return, she earned $6,444 in 2000. [At the request of the court, the facts relevant to and discussion of the issues of equitable distribution have been deleted from the published opinion. The court affirmed denial of plaintiff's motion to set aside the equitable distribution.]

II.
We reach a different result regarding the quantum of child support. Neither party nor the motion judge disputed that the $800 agreed-upon support figure did not meet the Child Support Guidelines (the guidelines). R. 5:6A provides:
The guidelines set forth in Appendix IX of these Rules shall be applied when an application to establish or modify child support is considered by the court. The guidelines may be modified or disregarded by the court only where good cause is shown. Good cause shall consist of a) the considerations set forth in Appendix IX-A, or the presence of other relevant factors which may make the guidelines inapplicable or subject to modification, and b) the fact that injustice would result from the application of the guidelines. In all cases, the determination of good cause shall be within the sound discretion of the court.
A completed child support guidelines worksheet in the form prescribed in Appendix IX of these Rules shall be filed with any order or judgment that includes child support that is submitted for the approval of the court. If a proposed child support award differs from the award calculated under the child support guidelines, the worksheet shall state the reason for the deviation and the amount of the award calculated under the child support guidelines.

[R. 5:6A (emphasis added).][3]
Appendix IX-A(2) provides that the guidelines "must be used as a rebuttable presumption to establish and modify all child support orders" in both contested and uncontested matters. Pressler, supra, Appendix IX-A, "Considerations In Use of *1144 Child Support Guidelines," subpart 2 (emphasis added). A rebuttable presumption means that:
an award based on the guidelines is assumed to be the correct amount of child support unless a party proves to the court that circumstances exist that make a guidelines-based award inappropriate in a specific case. The guidelines may be disregarded or a guidelines-based award adjusted if a party shows, and the court finds, that such action is appropriate due to conflict with one of the factors set forth in sections 4, 7, 10, 13, 14, 15, or 20 of Appendix IX-A, or due to the fact that an injustice would result due to the application of the guidelines in a specific case. The determination of whether good cause exists to disregard or adjust a guidelines-based award in a particular case shall be decided by the court.

[Id.]
Subpart 21 of Appendix IX-A provides that "[i]n all cases, the decision to deviate from the guidelines shall be based on the best interests of the child. All deviations from the guidelines-based award and the amount of the guidelines-based award must be stated in writing in the support order or on the guidelines worksheet." Pressler, supra, Appendix IX-A, "Considerations In The Use Of Child Support Guidelines," subpart 21; see Capaccio v. Capaccio, 321 N.J.Super. 46, 56-57, 728 A.2d 253 (App.Div.1999) (upholding child support award calculated under guidelines despite that the award disregarded the federal poverty guidelines). Most significantly, subpart 22 of Appendix IX-A requires:
In accordance with R. 5:6A, if a child support amount in a stipulated or consent agreement differs from an award calculated using the support guidelines, the parties or their representatives shall state on a child support guidelines worksheet: (a) the amount of support that would have been awarded if calculated using the guidelines and (b) the reason that the stipulated amount differs from the guidelines-based award.
The parties did not comply with this provision, and the judge did not include such statement in the judgment. The Court's mandate requiring this statement insures that the guidelines become the starting point for any analysis of child support. Deviations must be accounted for, a failing here requiring further action.
We have commented on a failure to consider the guidelines in Winterberg v. Lupo, 300 N.J.Super. 125, 132, 692 A.2d 92 (App. Div.1997), and said:
the judge did not make specific findings that would explain why the Guidelines were disregarded. See R. 5:6A. Nor did he consider and apply N.J.S.A. 2A:34-23. The bare statement in paragraph 5 of the order that "plaintiff's austere budget and her obligation to pay substantial transportation expenses" warranted a deviation from the Guidelines is conclusory. The motion judge was required to resolve the gross and net income dispute, determine the appropriate support level based on the Guidelines and the statutory factors enumerated in N.J.S.A. 2A:34-23, and then, based on those findings, explain why the order deviated from the Guidelines. Even if the judge had good reasons for exercising his discretion in deviating from the Guidelines, we have no indication of what those reasons were. This is an unacceptable practice.

[Id. (emphasis added).]
While Winterberg was a contested child support case, other courts have mandated such findings especially where a custodial parent appears to have "waived" or compromised child support in the agreement between the parties.
In Monmouth County Division of Social Services for D.M. v. G.D.M., 308 N.J.Super. *1145 83, 95, 705 A.2d 408 (Ch.Div.1997), the parties entered into a consent order relieving a father of child support in exchange for termination of his parental rights. The Family Part judge vacated the order and said:
It is a fundamental principal of the Family Division that the right to child support belongs to the child or children, not to the custodial parent. Kopack[v. Polzer], supra, [5 N.J.Super. 114] at 117, 68 A.2d 484 [(1949)], aff'd, 4 N.J. 327, 72 A.2d 869 (1950); Martinetti[ v. Hickman], supra, [261 N.J.Super. 508] at 512, 619 A.2d 599 [(1993)]. Therefore, the actions and circumstances of the child, and not those of the parent, are to be evaluated in determining support obligations. Ibid. The right to collect arrears for child-related expenses may belong to the custodial parent. Stanton v. Stanton, 421 U.S. 7, 12, 95 S.Ct. 1373, 1376, 43 L.Ed.2d 688 (1975) (citing Anderson v. Anderson, 110 Utah 300, 306, 172 P.2d 132, 135 (1946)). However, it is clear that present child support rights lie exclusively with the child for whom they are ordered. The conscience of equity will not permit the present needs of children to be limited by the agreements of their parents. Wertlake v. Wertlake, 127 N.J.Super. 595, 318 A.2d 446 (Ch.Div.1974), rev'd on other grounds 137 N.J.Super. 476, 349 A.2d 552 (App.Div.1975). As noted above, the obligation of all parents to provide, to the degree possible, for their children is fundamental, and can not therefore be destroyed by the errant, capricious, or uninformed actions of the other parent.
In keeping with these concepts, it is clear that regardless of the unenforceable termination of the defendant's rights in this case, plaintiff, as custodial parent, lacked standing to effectively waive her right to child support, as that support right belongs to the child, and not to that parent.

[Id. at 95-96, 705 A.2d 408 (emphasis added).]
While plaintiff here did not "waive" child support, she apparently compromised support for her children as a basis for relief from a challenge to her moving with the children to Maryland, a challenge that appears to be questionable, at best. The need for an inquiry into the quantity of support and the failure to adhere to R. 5:6A is most apparent here given the disputes in income and the number of children involved.
In sum, the parties failed to comply with the rule, the judge did not consider the guidelines nor whether the best interests of the children were served by deviating from the guidelines. The judge observed that "people have the right to make bad deals," but "bad deals" do not extend to child support. The "deal" was not simply an agreement affecting two independent parties. The most critical issue is the children's interests. Where such interests are compromised, courts must insure that they are protected. Cf. Bengis v. Bengis, 227 N.J.Super. 351, 547 A.2d 701 (App.Div. 1987) (permitting waiver of child support by a natural parent where the obligation may be imposed on a responsible third-party). No such inquiry was made here and a remand is mandated.
Finally, we briefly note that the exemptions for the children have an economic impact on the parties as well. In paragraph I of the agreement, the exemptions (incorrectly denominated as "deductions") were given to defendant. On remand, the issue of entitlement to the exemptions must also be considered.
We conclude that a hearing is required to consider the enforceability of paragraph O of the parties' settlement agreement. We remand this matter to the Family Part for such a hearing and consideration of the quantum of support and application of the *1146 guidelines. If a determination is made that support does not comply with the guidelines, appropriate findings shall be made consistent with R. 5:6A, and Appendix IX-A, subparts 21 and 22. The judge shall further consider the allocation of the exemptions consistent with the award of child support.
Affirmed in part; reversed and remanded in part. We do not retain jurisdiction.
NOTES
[1] Although referred to as "deductions," these are properly denominated as "exemptions." 26 U.S.C.A. § 152(e).
[2] Holder v. Polanski, 111 N.J. 344, 544 A.2d 852 (1988).
[3] The guidelines are not strictly applicable when a family's combined net weekly income exceeds $2,900. Pressler, supra, comment on R. 5:6A. In this situation, the court should consider the factors set forth in N.J.S.A. 2A:34-23, setting forth ten factors. Id. This does not apply here as the parties' combined net income did not appear to exceed $2900 per week.