**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0679-18T2

T.S.,

    Plaintiff-Respondent,

v.

P.T.,

    Defendant-Appellant.

_____

Submitted October 27, 2020 – Decided  December 22, 2020

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1804-07.

Newsome O'Donnell, LLC, attorneys for appellant (Edward J. O'Donnell and Jeffrey B. Hodge, of counsel and on the briefs; Aaron Cohen and Rebecca E. Frino, on the briefs).

Donohue, Hagan, Klein & Weisberg, LLC, attorneys for respondent (Francis W. Donohue, of counsel and on the briefs; Alex M. Miller, on the briefs).

PER CURIAM

Following their divorce in 2010, the parties filed numerous motions disputing alimony, child support, equitable distribution, their rights to credits, and ensuing attorneys' fees. Defendant, the former wife, appeals from provisions in several post-judgment orders that reduced the alimony and child support she was receiving, denied her request to obtain more discovery concerning plaintiff's assets and to reopen equitable distribution, awarded plaintiff a credit, and denied her request for attorneys' fees. Plaintiff cross-appeals from provisions in post-judgment orders and rulings that admitted certain evidence, denied his request for additional credits, and enforced a provision in the parties' matrimonial settlement agreement that required him to pay for unused parenting time.

The family court considered and ruled on various motions over several years and ultimately conducted an eight-day plenary hearing. The court then issued a forty-two-page written opinion setting forth its findings of fact and conclusions of law. Having reviewed the extensive record and applicable law, we discern no error or abuse of discretion in the rulings concerning alimony, equitable distribution, discovery, credits, admission of evidence, and attorneys' fees. We reverse the provision in the August 30, 2018 order concerning child

A-0679-18T2

support because the family court failed to apply the governing law on that issue. Accordingly, we remand that one issue.

I.

The parties were both born and raised in Turkey and separately came to the United States of America.[1] They met in 1993 in Texas and were married in 1994. Thereafter, they moved several times and eventually resided in New Jersey. They have three children: E.S., born in February 2001; A.S., born in April 2003; and R.S., born in April 2003. All the children have special educational needs.

Plaintiff filed for divorce in 2007. In 2010, after three years of extensive litigation, the parties, with the assistance of counsel, negotiated and entered into a Matrimonial Settlement Agreement (MSA). The MSA was incorporated into a final judgment of divorce that was entered on June 7, 2010.

Under the MSA, plaintiff agreed to pay defendant alimony of $120,000 per year for 10 years. In addition, plaintiff agreed to pay defendant child support of $144,000 per year. The MSA also required each parent to deposit $1,000 per month into a savings account or other investment account for the children.

---

[1] We use initials and titles to protect the privacy of the litigants and preserve the confidentiality of certain records because we discuss some of their financial circumstances. See R. 1:38-3(d).

A-0679-18T2

Furthermore, the MSA stated that each parent would be responsible for his or her childcare expenses, but if plaintiff failed to exercise his parenting time, he would reimburse defendant for her extra childcare costs up to $150 per day.

Defendant has a master's degree in business administration in finance. In 2000, she earned $93,000 working for ARC Partners. She stopped working during the marriage after the parties' first child was born in early 2001.

Plaintiff has a degree in economics from the University of Istanbul and a degree in business computer information systems from the University of North Texas. During the marriage, plaintiff worked as a project manager, a computer programmer, and had an ownership interest in a computer software company, Future Technology Associates, LLC (FTA). FTA was established in 2005. Initially, plaintiff owned forty percent of the company and he had two partners - - Jonathan Krohe and Derek Wong - - each of whom owned thirty percent of FTA. In 2006, plaintiff and Krohe purchased Wong's interest, and thereafter plaintiff owned sixty percent of FTA and Krohe owned forty percent.

In 2005, FTA signed a contract with the New York City Department of Education (NYDOE) to provide information technology services to the department. The 2005 contract called for FTA to be paid on a per diem basis for employees who worked on the services for the NYDOE. The estimated cost

4

of the contract to NYDOE was $2.5 million per year. That contract was extended through 2009.

In 2007, plaintiff and Krohe established a company in Turkey, known as Krono. Thereafter, Turkish-based consultants of Krono did work for FTA on the NYDOE contract.

In 2009, the New York Daily News published a series of articles questioning the legitimacy of the FTA-NYDOE contract. In particular, the articles raised questions about FTA's use of foreign workers. In late 2009, the Special Commissioner of Investigation for the New York City school district (SCI) began to investigate FTA, plaintiff, and Krohe.

It was in this context that the parties negotiated the MSA. The MSA states that FTA's loss of the NYDOE contract "may" constitute a change of circumstances. Specifically, paragraph thirty-five of the MSA states:

> The parties acknowledge that the Special Commission of Investigation ("SCI") for the New York City Department of Education is currently investigating FTA and the Husband as a President of the corporation. The results and recommendation of that investigation may potentially have an impact on the continued existence of FTA's current Contract with the New York City Board of Education and/or the value of the contract and its other provisions and terms. In the event that FTA's contract with the New York City Board of Education is terminated or the value of the contract is decreased, the parties agree that either event may

5

> constitute a change of circumstances warranting a review and modification of the alimony and child support provisions of this Agreement upon application properly made by either party to a court of competent jurisdiction.

In May 2011, the NYDOE terminated its contract with FTA. Thereafter, the SCI sought to depose plaintiff and other persons associated with FTA. On the advice of his attorney, plaintiff asserted his Fifth Amendment right not to testify in connection with the SCI investigation.

In September 2011, the SCI issued its final report. The report stated that plaintiff and FTA had committed fraud by failing to reveal ownership of Krono and by overcharging for the work done by Krono employees. In that regard, the SCI report asserted that plaintiff and Krohe would pay Krono employees $10 to $14 per hour for work, but then bill that work to the NYDOE at $110 per hour.

In December 2015, the NYDOE sued FTA, plaintiff, and Krohe seeking $75 million under the New York False Claims Act. In October 2018, FTA, plaintiff and Krohe settled with NYDOE. The amount that FTA and plaintiff paid in connection with the settlement has not been disclosed in the record before us. Plaintiff represents, however, that the settlement was without admission of any liability or fault. Plaintiff also represents that, to date, no criminal charges have been brought against him or FTA.

A-0679-18T2

Following the issuance of the SCI report in September 2011, the parties filed a series of motions and cross-motions. In 2011, defendant sought to reopen discovery concerning plaintiff's assets and to reopen the judgment of divorce to allow her to obtain more equitable distribution. Following an appeal to us and a remand, defendant was allowed to conduct more discovery. In 2016, the family court conducted an evidentiary hearing. On May 3, 2017, the court issued an opinion and order denying defendant's request for more discovery and denying her request to reopen equitable distribution. In making that ruling, the court found that plaintiff had produced all relevant discovery.

In May 2013, plaintiff moved to terminate or modify his alimony and child support obligations. Plaintiff claimed that after the loss of the NYDOE contract, he was unable to obtain comparable work for FTA and he was also unable to obtain comparable income for himself.

In support of his motion, plaintiff filed a case information statement (CIS) claiming he owned assets that had a total value of just over $667,000. Plaintiff's CIS also listed a fifty percent ownership interest in a company named Famkro, but he did not value that interest.

Following a series of additional motions and cross-motions, the family court found that defendant had made a prima facie showing of a change of

circumstances, allowed discovery, and then conducted a plenary hearing. The hearing began in December 2017 and continued on seven non-consecutive days into June 2018.

On August 30, 2018, the court issued a written opinion and order. The order: (1) reduced plaintiff's alimony payment to $60,000 per year, to be paid $5,000 per month, retroactive to May 13, 2013; (2) reduced plaintiff's child support payments to $36,000 per year, to be paid $3,000 per month, retroactive to May 13, 2013; (3) granted defendant's request to enforce the missed parenting time clause in the MSA and ordered plaintiff to pay $55,270; and (4) denied both parties' request for attorneys' fees.

In its opinion, the family court made detailed findings of facts. With regard to plaintiff's past income and his ability to currently earn income, the court found that: (1) between 2002 and 2005, the parties' joint income averaged $198,697 per year; (2) in 2006, plaintiff's income had been $1,266,000; (3) in October 2010, plaintiff purchased an interest in Famkro, LLC (Famkro), a real estate holding company that owned 6 properties worth $8,564,000; (4) the FTA lost its contract with NYDOE in 2011, and plaintiff had not been able to obtain comparable contractual work for FTA, nor had he been able to obtain comparable work for himself; and (5) $300,000 of annual income should be

imputed to plaintiff based on his ability to earn income and his investment income from Famkro.

In making those findings, the court noted that plaintiff had failed to inform it of the value of the properties owned by Famkro. The court also pointed out that plaintiff had failed to disclose in his CIS a $225,039 tax refund he received in 2012.

Concerning the loss of the NYDOE contract, the court found that it could not determine that the contract had been terminated as a result of plaintiff's alleged fraudulent conduct or any other alleged wrongdoing on his part. In that regard, the court noted that plaintiff had not been charged with criminal conduct in connection with the NYDOE contract. The court also stated that plaintiff had not been found civilly liable to NYDOE.[2] The court also noted that when the parties negotiated their MSA, they expressly acknowledged the existence of the SCI investigation and the possibility that the NYDOE contract could be lost.

Concerning defendant, the court found that in 2018: (1) she was employed by Orica Nitro, a company owned by her father; (2) she owned stock in Orica

---

[2] At the time that the court made this finding in August 2018, the civil action against FTA and plaintiff was still pending. That action was resolved by a settlement reached in October 2018. As already noted, plaintiff represents that the settlement expressly stated that plaintiff did not acknowledge any wrongdoing or civil liability.

Nitro worth approximately $1.4 million; (3) she owned other assets worth over $1.5 million; (4) she substantially understated her assets and income at the hearing; and (5) $80,000 of annual income should be imputed to her.

Based on those findings, the court reduced plaintiff's alimony obligation from $120,000 per year to $60,000 per year. The court also reduced plaintiff's child support obligations from $144,000 per year to $36,000 per year, which the court reasoned neared "the percentage reduction in plaintiff's income from $1,266,000 per year to an imputed income of $300,000 per year."

Addressing the missed parenting time, the court found that it was undisputed that plaintiff had not exercised parenting time with the children for over two and a half years. Consequently, the court applied paragraph fifty-four of the MSA and found that plaintiff owed defendant $55,270 for missed parenting time. The court then offset that amount against credits for plaintiff's overpayment of child support.

Finally, the court analyzed the factors relevant to an award of counsel fees and found that neither party was entitled to an award. The court also found that neither party had "taken a bad faith position in this matter."

A-0679-18T2

II.

Defendant appeals from portions of orders entered on August 30, 2018, May 3, 2017, October 16, 2015, and October 5, 2015. Plaintiff cross-appeals from portions of some of those orders, as well as evidentiary rulings. The orders entered in 2017 and 2015 became final after the family court conducted a plenary hearing and issued its August 30, 2018 order. The issues raised by the parties concern the family court's rulings on: (1) alimony; (2) admission of evidence related to the alimony ruling; (3) child support; (4) discovery and reopening equitable distribution; (5) credits to plaintiff; (6) enforcement of the MSA provision concerning plaintiff not exercising parenting time; and (7) attorneys' fees.

The scope of our review of an order issued by the family court following a plenary hearing is limited. Cesare v. Cesare, 154 N.J. 394, 411-13 (1998). We will not disturb the factual findings made if they are supported by substantial, credible evidence in the record. Gnall v. Gnall, 222 N.J. 414, 428 (2015); Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017). In contrast, a "trial judge's legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Reese v. Weis, 430 N.J. Super. 552, 568 (App.

Div. 2013) (citing <u>Manalapan Realty, LP v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)).

1. Alimony

Several well-established principles govern whether a court should modify alimony. First, if the parties agree to the amount and conditions of alimony, that agreement should be enforced like any other settlement agreement. <u>Quinn v. Quinn</u>, 225 N.J. 34, 44-46 (2016). "A settlement agreement is governed by basic contract principles." <u>Id.</u> at 45 (citing <u>J.B. v. W.B.</u>, 215 N.J. 305, 326 (2013)). Accordingly, the court's role is to "discern and implement the intentions of the parties" as expressed in the agreement. <u>Ibid.</u> (citing <u>Pacifico v. Pacifico</u>, 190 N.J. 258, 266 (2007)).

Second, unless the parties have agreed otherwise, alimony "may be revised and altered by the [family] court from time to time as circumstances may require." N.J.S.A. 2A:34-23. To justify a modification or termination, the moving party must show "changed circumstances." <u>Lepis v. Lepis</u>, 83 N.J. 139, 146 (1980). In <u>Lepis</u>, the Court recognized a non-exhaustive list of factors that give rise to changed circumstances warranting modification or termination of alimony. <u>Id.</u> at 151-52. Similarly, in N.J.S.A. 2A:34-23(k) and (l), the Legislature identified factors a court needs to consider when a party seeks to

modify alimony.  Among other things, the court should consider the reason for any loss of income, the efforts by the obligor to obtain replacement income or new employment, and the financial circumstances of the parties.  N.J.S.A. 2A:34-23(k) to (l); see also Lepis, 83 N.J. at 151-52; Larbig v. Larbig, 384 N.J. Super. 17, 22-23 (App. Div. 2006).

After hearing the testimony and considering the documents that had been submitted at the evidentiary hearing, the family court found that plaintiff no longer had the ability to earn $1.2 million per year because of the loss of the NYDOE contract.  The court credited plaintiff's testimony that he had sought to obtain new contracts for FTA but had been unable to obtain comparable contracts.  The court also rejected defendant's arguments that plaintiff had caused the termination of the NYDOE contract.  In determining that it could not conclude that the NYDOE contract was terminated because of plaintiff's alleged fraudulent conduct, the court found that plaintiff had not been criminally charged nor had he been found to be civilly liable.  Moreover, the court noted that the MSA expressly acknowledged the existence of the SCI investigation and that the NYDOE contract could be lost.

The family court then went on to find that while plaintiff's income had decreased, he was voluntarily underemployed, and income should be imputed to

13

him. The court then relied on testimony from defendant's expert, Gregory Haggerty. The court noted that plaintiff produced no rebuttal expert to refute Mr. Haggerty's methodology. The court considered plaintiff's ability to obtain income from employment and his investment income from Famkro and imputed $300,000 of annual income to plaintiff. Those findings are all supported by substantial credible evidence in the record and they are consistent with the governing law.

Defendant argues that the family court erred, contending that plaintiff had failed to disclose all his financial assets and his ability to receive income from his investments. The family court considered all the arguments that defendant now makes but did not reach the ultimate conclusion that defendant seeks. In other words, the court rejected defendant's argument that plaintiff was not equitably entitled to a reduction in alimony. We discern no abuse of discretion in the family court's rejection of defendant's arguments.

Defendant also contends that paragraph thirty-five of the MSA does not support the family court's finding because it only stated that the loss of the NYDOE contract "may" constitute a change of circumstances. Moreover, defendant contends that the contract was lost because of fraudulent actions by plaintiff. As already noted, the court rejected defendant's arguments that the

14

NYDOE contract was lost due to fraudulent activities by plaintiff. The court was also well aware that the MSA stated that the loss of the NYDOE contract may constitute a change of circumstances. After evaluating those circumstances, the court found that the loss of the contract did constitute a change of circumstances.

Defendant also contends that the family court failed to consider the factors identified in N.J.S.A. 2A:34-23. Initially, we note that defendant argues that the court failed to consider the factors in subsection (b), which governs an initial award of alimony. More importantly, a review of the family court's comprehensive decision demonstrates that the court considered all relevant factors identified in N.J.S.A. 2A:34-23 and cogently analyzed those factors in modifying plaintiff's alimony obligation.

2.   The Admission of Evidence

In his cross-appeal, plaintiff argues that the family court erred in permitting testimony from defendant's expert witness, Gregory Haggerty. Plaintiff argues that Haggerty was not qualified to testify as a vocational expert and the court erred in relying on his testimony in imputing income to plaintiff.

We review decisions concerning the admission of expert testimony for an abuse of discretion. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344,

371 (2011). The admission of expert testimony is governed by N.J.R.E. 702 and 703, and a trial court may permit opinion testimony by "a witness qualified as an expert by knowledge, skill, experience, training, or education" in situations where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." N.J.R.E. 702.

Haggerty was admitted as an expert on the issue of plaintiff's ability to earn income. He testified that he was an accountant with a certification in financial forensics and spent twenty-five years working for the FBI. The family court admitted Haggerty's testimony for certain purposes and then relied on the testimony in connection with evidence presented at the plenary hearing. We discern no abuse of discretion in the family court permitting the testimony of Haggerty.

3.    Child Support

Defendant argues that the family court erred in reducing plaintiff's child support obligations without using the Child Support Guidelines to determine a base child support award, and then analyzing the factors in N.J.S.A. 2A:34-23(a) to determine the supplemental child support award. We agree. Under the parties' MSA, plaintiff was obligated to pay defendant child support for 3 children in the amount of $144,000 per year. That agreement was reached at a

time when plaintiff's income was above $1.2 million per year. The family court found that plaintiff's income had been substantially reduced and imputed income to plaintiff of $300,000 per year. The family court erred in reducing the child support by applying the percentage reduction in plaintiff's income.

The Child Support Guidelines need to be applied when establishing or modifying child support. See R. 5:6A. "If the combined net income of the parents is more than $187,200 per year, the court shall apply the Guidelines up to $187,200 and supplement the guidelines-based award with a discretionary amount based on the remaining family income above $187,200 and the factor specified in N.J.S.A. 2A:34-23." Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at ¶ 20, www.gannlaw.com (2020). "The key to both the guidelines and the statutory factors is flexibility and the best interest of children." Pascale v. Pascale, 140 N.J. 583, 594 (1995). "If the court finds that the guidelines are inappropriate in a specific case[,]" it either disregards or modifies the calculation and "the reason for the deviation and the amount of the guidelines-based award . . . must be specified in writing." Pressler & Verniero, Appendix IX-A to R. 5:6A at ¶ 3; Ordukaya v. Brown, 357 N.J. Super. 231, 239-40 (App. Div. 2003) (holding that any deviation from the child support guidelines "must be accounted for").

Here, the family court did not explain why it deviated from the guidelines, nor did the court provide an adequate explanation of why it reduced plaintiff's child support obligation from $144,000 per year to $36,000 per year. Accordingly, we vacate the provision of the August 30, 2018 order concerning child support and remand that one issue for a new analysis and a new ruling.

4.    Discovery and Reopening Equitable Distribution

Defendant argues that the family court abused its discretion by denying her request to conduct further discovery into plaintiff's assets.  Defendant also argues that the family court abused its discretion by denying her request to reopen equitable distribution due to plaintiff's alleged undisclosed assets.  We reject these arguments.

"An appellate court applies 'an abuse of discretion standard to decisions made by [the] trial courts relating to matters of discovery.'"  C.A. ex rel Applegrad v. Bentolila, 219 N.J. 449, 459 (2014) (alteration in original) (quoting Pomerantz Paper Corp., 207 N.J. at 371).

Following our remand in an earlier appeal, the family court allowed further discovery concerning plaintiff's assets.  The court then conducted a hearing and on May 3, 2017, the court found that plaintiff had provided all discovery that was in his custody, possession, and control and he was therefore

in compliance with the discovery orders. The court then denied defendant's request to conduct further discovery and to reopen equitable distribution.

Defendant argues that the court's decision not to hold a plenary hearing on the issue of reopening equitable distribution was fundamentally unfair. "[A] plenary hearing is only required if there is a genuine, material and legitimate factual dispute." Siegel v. Lynch, 211 N.J. 230, 264-65 (2012). A judge's decision to conduct a plenary hearing is reviewed for an abuse of discretion. Hand v. Hand, 391 N.J. Super. 102, 111-12 (App. Div. 2007). We discern no abuse of discretion in the denial of defendant's request to conduct further discovery and to reopen equitable distribution.

5.    Credits to Plaintiff

In 2015, plaintiff moved for a credit, contending that he had made an extra $11,000 support payment in September 2010. Plaintiff explained that he had sent 2 physical checks to defendant and $11,000 was contemporaneously debited from his Chase account. He also pointed out the automatic support deductions from his Chase account had begun that month. In response, defendant contended that the $11,000 payment was a prepayment for the next month. After considering the parties' submissions and a motion for reconsideration, the court

A-0679-18T2

found that plaintiff had shown he had made an extra $11,000 support payment and thus granted him a credit in an order dated October 5, 2015.

On appeal, defendant argues that the family court's decision was an abuse of discretion because the evidence supports her theory that plaintiff made a payment ahead of time. We reject this argument because there is substantial evidence in the record supporting the family court's finding and we discern no abuse of discretion.

In his cross-appeal, plaintiff argues that the family court: (1) erred in awarding defendant $4,650 in unreimbursed expenses; (2) failed to credit him with $4,822.50 paid to one of the children's physicians; and (3) failed to credit him with $10,500 in payments made to defendant. Having reviewed the record, we discern no abuse of discretion because the family court's determinations concerning these credits were supported by sufficient evidence. Moreover, these issues do not warrant further discussion in a written opinion. See R. 2:11-3(e)(1)(E).

6. Enforcement of the MSA Concerning Plaintiff Not Exercising Parenting Time

Plaintiff contends that the family court erred in enforcing paragraph fifty-four of the MSA. When the language in a marital settlement agreement is clear

and unambiguous, the agreement will be enforced as written.  Quinn, 225 N.J. at 45-46.  It is not the role of the court "to rewrite or revise an agreement when the intent of the parties is clear."  Id. at 45.  The language of paragraph fifty-four of the parties' MSA is clear and unambiguous; it states that plaintiff would be responsible for reimbursing defendant if he fails to exercise his parenting time.  Since there was no dispute that plaintiff missed parenting time with the children for over two and a half years, we find that the family court did not abuse its discretion in enforcing this provision of the MSA.

7.    Attorneys' Fees

We review the trial court's order concerning attorneys' fees under an abuse of discretion standard.  Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2007) (citing Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).  N.J.S.A. 2A:34-23 authorizes family courts to award counsel fees in a matrimonial action after a judge considers "the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good faith or bad faith of either party."  Chestone v. Chestone, 322 N.J. Super. 250, 255-56 (App. Div. 1999) (quoting N.J.S.A. 2A:34-23).  Rule 5:3-5(c) states that a court should consider nine factors, including "reasonableness and the good faith of the position advanced by the parties[.]"

A-0679-18T2

The family court here identified the factors enumerated in the court rules and found that those factors did not support an award of counsel fees to either party. The court also found that neither party had acted in bad faith. We discern no abuse of discretion in those determinations.

## III.

In summary, we affirm all the orders concerning the rulings on alimony, admission of evidence, discovery, reopening equitable distribution, credits, enforcement of the MSA, and attorneys' fees. We reverse and remand for further proceedings on the provision in the August 30, 2018 order concerning child support.

Affirmed in part and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0679-18T2