**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0310-22

C.D.V.D.,[1]

    Plaintiff-Appellant,

v.

B.K.T.,

   Defendant-Respondent.

_____

Submitted January 18, 2024 – Decided February 15, 2024

Before Judges Firko and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FM-03-1185-20.

C.D.V.D., appellant pro se.

Weinberger Divorce & Family Law Group, LLC, attorneys for respondent (Rachel Elena Partyka and Wayne G. Perry, on the brief).

---

[1] We utilize the initials of the parties involved in this matter to protect their privacy and their child. R. 1:38-3(d)(3) and (13).

PER CURIAM

In this custody and parenting time dispute, plaintiff C.D.V.D. appeals from the Family Part's May 16, 2022 dual final judgment of divorce (FJOD) awarding the parties joint legal and physical custody of their son H.J., born in February 2018, designating defendant B.K.T. as the parent of primary residence (PPR), and designating plaintiff as the parent of alternate residence (PAR). The judge found plaintiff's request to relocate to Portugal with the parties' son was not in the child's best interest. Plaintiff also appeals the provisions of the FJOD ordering her to pay $189 per week in child support to defendant and the counsel fee award of $50,000 entered against plaintiff in favor of defendant. In addition, plaintiff appeals from the August 29, 2022 post-judgment order denying her motion for reconsideration of these issues.

For the reasons that follow, we affirm the decision designating defendant as PPR, denying plaintiff's request to relocate to Portugal, and establishing the child support amount. However, we reverse and remand the award of counsel fees because the judge did not address the factors required by Rules 5:3-5(c), 4:42-9, and RPC 1.5(a).

2

I.

Factual Background

We summarize the facts developed in the record. The parties married in 2015. Plaintiff was born in Portugal. Because plaintiff's father was a diplomat, she and her family moved every few years. At the age of eight, she moved to Maryland, then later to Brussels, and she returned to Portugal at the age of sixteen for two years. In 2003, plaintiff moved to the United Kingdom where she attended college, earned a master's degree, and began her career. Plaintiff maintains dual citizenship in Portugal and the United States. Defendant was born in Pennsylvania and moved to New Jersey when he was eight years old. He does not have dual citizenship.

In 2010, the parties met in London, where they were both living and working at the time. On May 25, 2015, the parties entered into a pre-nuptial agreement and were married in a civil ceremony in Lisbon, Portugal three days later.[2] The pre-nuptial agreement does not address where the parties would live after they got married, but plaintiff contends that prior to their marriage, the parties agreed to move to the United States for a period of ten years before

---

[2] The parties had a second religious wedding ceremony in May 2016, also in Portugal.

A-0310-22

returning to Portugal where the couple would reside. Following the marriage, the parties moved to New Jersey and resided with defendant's parents while he was seeking employment. In January 2016, the parties moved to Philadelphia, Pennsylvania, where they resided until early 2018. They moved to Mount Laurel six months later after their son was born. H.J. is a dual citizen of the United States and Portugal and has lived his entire life in New Jersey.

After moving to the United States, plaintiff was unemployed for a year but claims she ultimately secured employment that paid less money than she earned in London. The parties agreed plaintiff would resign from her position after she became pregnant with H.J. After their son was born, defendant worked from home every day, and plaintiff cared for their infant. In June 2018, H.J. traveled to Portugal with the parties and stayed with his maternal grandparents for several weeks.

In April 2019, H.J. entered daycare. The following month, defendant changed jobs and began working for Iridium Technology, which provides business intelligence services for legal services providers. He works remotely, with ten to twenty days of travel per year. In June 2019, plaintiff co-founded Canopy Group, a virtual personal assistance firm, which provides clients with in-person and remote professional and executive assistant services. During the

4

COVID-19 pandemic, H.J.'s daycare shut down and defendant's business travel ended. Defendant's parents assisted with childcare when daycare was closed. When travel resumed post-pandemic, plaintiff and H.J. went to Portugal for three weeks in the summer of 2020, and H.J. has spent time there during the summer with plaintiff in subsequent years.

On May 12, 2020, plaintiff filed a complaint for divorce on the ground of irreconcilable differences. Defendant filed an answer and counterclaim and later filed an amended counterclaim, which is not germane to this appeal.

On October 2, 2020, plaintiff contended defendant was using drugs and that drug residue was left on one of H.J.'s playroom items. A week later, plaintiff filed an order to show cause (OTSC) seeking to compel defendant to submit to a hair follicle drug screen, require defendant to have supervised parenting time with H.J., and award her sole custody if defendant's drug screen was positive. The OTSC was denied without prejudice as non-emergent and not meeting the standard for preliminary injunctive relief.

Plaintiff filed a motion seeking the same relief, which was returnable on December 11, 2020. Defendant countered that plaintiff planned to kidnap H.J. The judge ordered defendant to submit to a TASC[3] evaluation. Plaintiff's

_____

[3] Treatment Assessment Services for the Courts.

application to restrict defendant to supervised parenting time was denied without prejudice, pending the results of the TASC evaluation. The TASC evaluation revealed defendant did not exhibit symptoms of a substance abuse disorder and treatment was not recommended.

On January 19, 2022, the parties entered into a marital settlement agreement (MSA), which resolved the majority of their equitable distribution and financial issues. On February 3, 2022, they entered into a custody and temporary parenting time agreement, which provided they "shall enjoy shared legal custody of the minor child born of the marriage" and "[t]here shall be no residential custody determination at this juncture, other than to memorialize that the parties continue to reside in the same home together with [H.J.] and neither has been designated as [H.J.'s] primary custodial parent. This determination is pending the [c]ourt's decision."

The Trial

The judge conducted a non-consecutive seven-day trial in January and February 2022 via Zoom limited to the following issues: (1) custody and parenting time; (2) plaintiff's request to relocate with H.J. to Portugal; (3) child support; and (4) counsel fees.

A-0310-22

Eight lay witnesses and two experts testified during the trial. The judge determined both parties were "very fit, competent and capable parents" but noted they "are unwilling or unable to agree and cooperate in matters relating to the child, and therefore are unable to resolve conflicts." When plaintiff testified at trial, she reaffirmed that she wanted to relocate to Portugal with H.J., but she intended to relocate to Portugal even if she was not granted custody of the child. In fact, plaintiff relocated to Portugal on June 26, 2022, and has remained living there. H.J. spent the summer of 2022 with plaintiff in Portugal. Plaintiff travels back and forth from Portugal to New Jersey to exercise parenting time with H.J. She speaks to H.J. exclusively in Portuguese and extolled the benefits of a Portuguese education, explaining the linguistic and cultural benefits.

Plaintiff asserted she needed to relocate to Portugal, in part, to be in a better time zone to service the European market after her company, Canopy Group, was unsuccessful in the United States, and her business partner and financial backer, S.C., "would not be inclined to invest in the business any further" if its financial condition did not improve.

Canopy Group is based in the United Kingdom. S.C. testified the company's growth "has been much slower than anticipated," and the company was just "breaking even." Based on these circumstances, S.C. testified that

7

Canopy Group has been attempting to "develop[] its clientele in the European market," and may try to "re-establish itself in the U.S. at some point in the future." S.C. testified plaintiff could better service and develop clients if she relocated to Portugal, where she could "more effectively leverage her business and family's contacts." According to S.C., Canopy Group had three to six months of "runway" left, referring to his willingness to continue to finance the business for that period of time.

Plaintiff's custody expert, Harry Green, Psy.D., prepared an evaluation, interviewed the parties, administered psychological testing, observed each party interact with H.J., and conducted collateral interviews. At trial, Dr. Green assumed defendant would not move to Portugal and opined that it would be in H.J.'s best interest to remain in the United States with plaintiff designated as PPR. However, Dr. Green also testified that if plaintiff moved to Portugal and defendant remained in New Jersey, H.J.'s best interests would be served by relocating to Portugal because plaintiff is the child's "primary attachment figure," she has a better job opportunity in Portugal, it is more feasible for defendant to interact with H.J. in Portugal because of his remote work and prior employment history in Europe than for plaintiff to interact with H.J. in New

8

Jersey, and Portugal offers better access to both Portuguese and American culture and language than New Jersey.

Dr. Green opined the parties' "relationship was strained," and that they were "inflexible and unwilling to compromise" their parenting styles. Dr. Green testified that defendant resisted allowing H.J. to visit plaintiff's extended family in Portugal. Dr. Green stated, "any prior drug use on defendant's part has not impeded his ability to function" and that "he is capable of safe and effective parenting." Dr. Green testified he did not think it was necessary to subject defendant to drug screening. After observing H.J.'s interaction with both parties, Dr. Green opined that H.J. "was more interactive" with plaintiff but was "comfortable with both parents" and was "bonded" with both of them.

Plaintiff's younger sister, M.D., testified she lives in Lisbon and explained what the city has to offer in terms of culture, sports, and nearby beaches. M.D. stated plaintiff's family lives nearby, including H.J.'s maternal grandparents. M.D. testified both parties are good parents, but her sister "is a bit better" with being hands-on with H.J. On cross-examination, M.C. indicated she has FaceTime calls with H.J. daily.

Plaintiff's father, A.D., testified he resides in Portugal. He speaks to H.J. in Portuguese. A.D. stated the only way he can maintain a relationship with H.J.

is on FaceTime. Plaintiff also presented testimony from M.F., a family law attorney in Portugal, who testified about the status of Portuguese law, plaintiff's parental rights in Portugal, and Hague Convention concerns.

Defendant testified that he purchased a home in Moorestown, a short distance from the parties' former marital residence and close to H.J.'s daycare, paternal grandparents, and friends. Defendant is employed full-time in New Jersey, which gives him sufficient flexibility to serve as H.J.'s PPR. T.J., Iridium Technology's Chief Executive Officer and defendant's supervisor, testified defendant's job security was predicated on his remaining in the United States. Defendant testified he cannot relocate to Portugal.

Defendant's custody expert, Gregory W. Joseph, Psy.D., also prepared an evaluation, interviewed the parties, administered psychological testimony, observed each party interact with H.J., and conducted collateral interviews. Dr. Joseph opined he opposed H.J.'s relocation to Portugal because H.J. would experience difficulties adjusting because of his young age, "late language development," and "some emotional dysregulation," such as tantrums and difficulty soothing himself, when frustrated. Dr. Joseph testified that relocation would not provide the stability and consistency H.J. needs in anticipation of starting kindergarten in September 2022.

A-0310-22

Dr. Joseph described plaintiff's parenting style as "democratic" and "emphasizing high nurturance, communication, and expectations, with moderate control" and noted she only speaks to H.J. in Portuguese. In contrast, Dr. Joseph described defendant's parenting style as "authoritative . . . with high nurturance, expectations and control and moderate communication," and noted he only speaks to H.J. in English. Dr. Joseph recommended H.J. be evaluated for his delayed language development and "over-reliance on gestures" through the school district or a facility, such as the Children's Hospital of Pennsylvania, to ensure he is prepared to enter elementary school.

M.F., defendant's mother, testified she is a retired schoolteacher. M.F. and her husband live fifteen minutes away from the parties. She testified that H.J. has a bedroom at her house. M.F. stated she picked up and dropped off H.J. at daycare and that she cared for him during the pandemic.

<u>The Judge's Decision</u>

The judge rendered a thirty-three-page written opinion, which was incorporated into the FJOD, denying plaintiff's request to relocate to Portugal with H.J. The judge emphasized plaintiff's proposed relocation would "result in some positive developments for [H.J.], [but] that any such benefits do not come close to outweighing the substantial and irreparable harm that would result to

11

his relationship with [defendant] as a consequence of his relocating to a country over 3,000 miles away."  The judge identified steps that could be taken to expose H.J. to a Portuguese community in the United States and stated, "[t]he ability to be immersed in Portuguese language and culture does not take precedence over [H.J.'s] relationship with [defendant,] . . . ."

In addition, the judge noted "such a relocation would also likely be detrimental to [H.J.]'s relationship with [defendant], due to the extended absences that any proposed parenting time schedule would involve."  The judge highlighted that as H.J. grows older, the proposed international shared parenting time schedule "would only grow more complicated and result in further conflict as he matures and becomes a teenager with his own interests, activities, and scheduling obligations."  The judge reasoned that plaintiff "had not explored potential employment opportunities in the U.S.," and her testimony, corroborated by S.C., that Canopy Group's prospects for success would improve if plaintiff relocated to Portugal "were largely speculative" and not based on evidence.

In support of this conclusion, the judge considered the statutory factors identified in N.J.S.A. 9:2-4(c), namely:

> the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents'

willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.

[Ibid.]

The judge rejected plaintiff's contention that the parties reached an agreement regarding relocation and found her allegation was not supported by the parties' pre-nuptial agreement. Plaintiff testified the parties were supposed to live in the United States for ten years and then relocate to Portugal. The judge noted "even by her own understanding of the alleged agreement" plaintiff's request to locate "is [five] years premature." The judge awarded PPR status to defendant, entered a parenting time schedule, ordered H.J. to be evaluated for language development and emotional functioning, and directed that H.J. begin receiving any recommended services. The judge also ordered defendant to submit to quarterly urine drug tests.

A-0310-22

The judge calculated the child support guidelines using a sole parenting worksheet, a weekly gross income of $1,058 for plaintiff, and $3,173 for defendant, and utilizing the parties' financial information provided at the time of trial. Although the judge awarded plaintiff up to two non-consecutive weeks of parenting time each month when she was within twenty-five miles of defendant, eight weeks of parenting time in the summer months in Portugal, and other parenting time, the judge found she should be allotted 16.16% of the overnights since the judge determined she would not exercise the parenting time of two non-consecutive weeks per month while residing in Portugal. The judge determined that plaintiff should pay $189 per week in child support directly to defendant.

As for the parties' counsel fee requests, the judge noted "[t]he results obtained in this case would strongly support [defendant's] request for a fee award" and found the positions plaintiff advanced were not brought in bad faith. After reciting the factors in Rules 4:42-9(a) and 5:3-5, N.J.S.A. 2A:34-23, and RPC 1.5(a), the judge made a "partial counsel fee award" in favor of defendant in the amount of $50,000.

In her reconsideration motion, plaintiff argued the judge erred in denying her request to relocate to Portugal with H.J., and not designating her as PPR; the

14

judge erred in calculating the child support amount because he did not utilize the shared parenting worksheet, did not give her proper credits for overnight visitation, and did not impute income to defendant on the approximately $450,000 he received in exempt funds from his former employer. Plaintiff also requested that the judge reconsider and clarify plaintiff's parenting time, specify parameters for defendant's drug testing, and require H.J. to be evaluated by a mutually agreed upon expert for behavioral and emotional problems quarterly.

The judge denied plaintiff's motion for reconsideration and issued an eleven-page written decision. Regarding plaintiff's request to impute "interest income at a reasonable rate of return to [d]efendant on the approximately $450,000 in exempt funds issued to him," the judge denied the request without prejudice as the transaction took place during or after the trial, and the record contained no evidence supporting plaintiff's allegations. Both parties' requests for an award of counsel fees incurred relative to the reconsideration motion was denied. This appeal followed.

On appeal, plaintiff argues the judge erred:

> (1) in denying her request to relocate with H.J. to Portugal;
>
> (2) in calculating the child support amount; and
>
> (3) in awarding counsel fees to defendant.

## II.

Our review of a family court order is limited.  See Cesare v. Cesare, 154 N.J. 394, 411 (1998).  Generally, the family court's factual findings "are binding on appeal when supported by adequate, substantial, credible evidence."  Id. at 412 (citing Rova Farms Resort, Inc. v. Inv's, Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

The conclusions of Family Part judges regarding child custody "are entitled to great weight and will not be lightly disturbed on appeal."  DeVita v. DeVita, 145 N.J. Super. 120, 123 (App. Div. 1976) (citing Sheehan v. Sheehan, 51 N.J. Super. 276, 295 (App. Div. 1958)).  Because this court recognizes "the special expertise of judges hearing matters in the Family Part," Parish v. Parish, 412 N.J. Super. 39, 48 (App. Div. 2010) (citing Cesare, 154 N.J. at 412), we will only disturb the Family Part's factual findings if "they are 'so wholly insupportable as to result in a denial of justice.'"  In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993) (quoting Rova Farms, 65 N.J. at 483-84).

An appellate court, in consequence, will only reverse the family court's conclusions if those conclusions are so "'clearly mistaken' or 'wide of the mark'" that they result in the denial of justice.  Parish, 412 N.J. Super. at 48 (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)).  The Family

16

Part's legal conclusions, however, are reviewed de novo. See N.J. Div. of Youth & Fam. Servs. v. I.S., 202 N.J. 145, 183 (2010).

"Discretionary determinations, supported by the record, are examined to discern whether an abuse of reasoned discretion has occurred." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (citing Gac v. Gac, 186 N.J. 535, 547 (2006)). An abuse of discretion occurs when a trial court's decision "rested on an impermissible basis, considered irrelevant or inappropriate factors, failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence." Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015) (internal quotation marks and citations omitted). Challenges to legal conclusions, as well as the trial court's interpretation of the law, are subject to de novo review. Ricci, 448 N.J. Super. at 565 (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

Under N.J.S.A. 9:2-2, a parent who seeks to remove a child from this state when the other parent does not consent must demonstrate "cause" for the removal. The legislative intent of N.J.S.A. 9:2-2 was "'to preserve the rights of the noncustodial parent and the child to maintain and develop their familial relationship.'" Bisbing v. Bisbing, 230 N.J. 309, 323 (2017) (quoting Holder v. Polanski, 111 N.J. 344, 350 (1988)).

In Bisbing, the Court interpreted "cause" under N.J.S.A. 9:2-2 as requiring the petitioning parent to satisfy the "best interests analysis . . . set forth in N.J.S.A. 9:2-4(c), supplemented by other factors as appropriate." 230 N.J. at 338 (citing N.J.S.A. 9:2-4(c)). The Bisbing Court specifically overruled the two-part removal test in Baures v. Lewis, 167 N.J. 91 (2001), and replaced it with the best-interest standard embodied in N.J.S.A. 9:2-4. 230 N.J. at 312-13.

Further, the Bisbing Court instructed that in making "the sensitive determination of cause[, a court] must weigh the custodial parent's interest in freedom of movement as qualified by his or her custodial obligation, the State's interest in protecting the best interests of the child, and the competing interests of the noncustodial parent." Id. at 323 (internal quotation marks omitted) (quoting Holder, 111 N.J. at 350).

Here, it is readily apparent the trial judge considered the principles enunciated in Bisbing and was cognizant of his charge to review the fourteen statutory factors under N.J.S.A. 9:2-4(c) when assessing plaintiff's application. The judge highlighted that both experts' hypothetical ideal scenario—for both parties to be actively involved with H.J. on a daily basis—was impossible because plaintiff intended to move to Portugal with or without H.J., and defendant was unwilling to relocate to Portugal. The judge noted defendant did

not have a visa or dual citizenship in Portugal, and his job and work travel were based in the United States.

Moreover, the judge identified steps which could be taken to expose H.J. to a Portuguese community and immerse him in his cultural heritage in the United States. The judge stressed "[w]hile opportunities for [H.J.] to be exposed to Portuguese language and culture are greater in Portugal than in the [United States], there are means" to accomplish these goals and "[t]he ability for [H.J.] to be immersed in Portuguese language and culture do not take priority over the relationship with his [f]ather," however.

Referring to N.J.S.A. 9:2-4(c), the judge observed both custody experts indicated the parties "failed to demonstrate an ability to parent [H.J.] jointly," and "they are unable to resolve conflicts." Based on these findings, the judge found the statutory factor involving the parties' ability to agree, communicate, and cooperate was in equipoise.

Regarding the parties' unwillingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse, the judge concluded both parties have shown a willingness to accept custody and both of them "have some examples of being unwilling to allow parenting time for the other not based on substantiated abuse." The judge highlighted that

19

defendant's prior denials of plaintiff's requests to take H.J. to Portugal to see his extended family "were focused on the safety concerns relating to the COVID-19 pandemic."

The judge also determined the next factor, the interaction and relationship of the child with his parents and any siblings, was supported by the experts' testimony that H.J. is bonded with both of his parents, but has a stronger attachment to plaintiff. The judge noted during Dr. Joseph's observation period, H.J. "was resistant to instructions" from both parents.

The judge found the factors regarding domestic violence and the safety of the child and the safety of either parent from physical abuse by the other parent were of no significance because there was no evidence either parent posed a threat to H.J. Further, because H.J. was only four years old when the hearing concluded, the judge determined he was unable to express a parental preference.

Turning to H.J.'s needs, the judge recognized both experts agreed that "maintaining frequent, consistent, if not daily contact with both parents is in [H.J.'s] best interest." The judge also noted both experts agreed it was not in H.J.'s best interest "for one parent to be living in the U.S. and the other in Portugal." The judge emphasized H.J. "is fortunate to have a good relationship

with both parties' extended families, and it is in his best interest to foster those relationships as well."

As to the stability of the home environment offered, and the geographic proximity of the parties' homes factors, the judge stated the parties resided together with H.J. during the pendency of the litigation. Based upon the parties' testimony, the judge determined both parties would be able to provide a stable home environment for H.J. if they separated and resided in different locations. The judge indicated plaintiff introduced evidence of a lease she entered into in Lisbon and that defendant was relocating to a new home in Moorestown, a short distance from the parties' existing residence.

Referencing the quality and continuity of H.J.'s education, the judge noted H.J. was transitioning from pre-school and daycare to kindergarten. The judge acknowledged plaintiff's "fears" that "the American educational system will not enable [H.J.] to develop his Portuguese language skills" and that defendant intended to enroll H.J. in the Moorestown school district. As to the fitness of the parents, this factor weighed equally in favor of both parents.

When assessing the extent and quality of time H.J. spent with his parents prior to and subsequent to the parties' separation, the judge found "both have

21

been actively involved in caregiving" and "[b]oth experts agreed that [H.J.] is closely bonded with both parents."

As to the statutory factory regarding the parents' employment responsibilities, the judge found plaintiff is self-employed and co-founded Canopy Group with S.C. in 2018 or 2019. The judge considered S.C.'s testimony that if plaintiff did not relocate to Portugal, it was unlikely the business would remain viable largely because the time difference between the United States and Europe made it difficult for her to service clients. Absent any changes, the judge noted S.C. testified that "he would not be inclined to invest in the business any further."

The judge stated plaintiff was previously employed by LexisNexis in London as a marketing coordinator and held other positions. She subsequently obtained employment in the Fintech—financial technology industry—which involves the use of technology to enhance financial services for businesses. The judge found plaintiff resigned from her position when she became pregnant with H.J., and looked for employment after he entered daycare, but ultimately co-founded Canopy Group with S.C.

The judge highlighted that defendant's employment provides him with "sufficient flexibility" that would enable him to be designated PPR. Although

22

defendant is expected to work in excess of fifty hours per week, the judge observed he could reschedule his business travel "in a way that is consistent with his child care responsibilities." Regarding the age and number of children factor, H.J. is an only child.

Here, the judge performed the required best interests analysis under N.J.S.A. 9:2-4(c), and addressed all of the factors. Contrary to plaintiff's contention, the judge did not make an erroneous decision in denying her request to relocate to Portugal with H.J. The judge aptly concluded, based upon the substantial credible evidence in the record, it would be in the best interest of H.J. to have defendant designated as PPR so he could continue to reside in New Jersey. The record supports the judge's findings and conclusions, and we discern no basis to disturb the judge's decision on custody and parenting time.

## III.

Plaintiff next argues the child support calculation was incorrect because the judge made factual errors in the gross annual income of both parties and awarding the number of overnights that the parties would exercise. She claims the judge accepted defendant's earned income was $165,000 but failed to include an additional $450,000 approximate amount he received in January 2022 from his former employer's payout and erred in using an inflated amount of $55,000

as her income. Plaintiff contends the judge awarded her eight weeks of parenting time each summer plus two weeks per calendar month outside the summer months, which equals 196 overnight each year, but only credited her with fifty-nine overnights per year without justification. We disagree.

The child support guidelines are presumptive absent a showing of good cause. Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 2, www.gannlaw.com (2024). The guidelines recognize "child support is a continuous duty of both parents . . . [and] children are entitled to share in the current income of both parents . . . ." Id. at ¶ 1.

> For the purpose of these guidelines, gross income, is all earned and unearned income that is recurring or will increase the income available to the recipient over an extended period of time. When determining whether an income source should be included in the child support guidelines calculation, the court should consider if it would have been available to pay expenses related to the child if the family would have remained intact . . . and how long that source would have been available to pay those expenses.
>
> [Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-B to R. 5:6A (2024).]

"In determining the amount of income to be imputed [for child support purposes], the court must take into consideration the specific circumstances of the parent for whom income imputation is being considered, to the extent known,

including but not limited to . . . assets [and] residence . . . ." Child Support Guidelines, Pressler & Verniero, <u>Current N.J. Court Rules</u>, Appendix IX-A to <u>R.</u> 5:6A, ¶ 12, www.gannlaw.com (2024).

"The trial court has substantial discretion in making a child support award." <u>Foust v. Glaser</u>, 340 N.J. Super. 312, 315 (App. Div. 2001) (citing <u>Pascale v. Pascale</u>, 140 N.J. 583, 594 (1995)). "If consistent with the law, such an award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." <u>Id.</u> at 315-16 (quoting <u>Raynor v. Raynor</u>, 319 N.J. Super. 591, 605 (App. Div. 1999)) (internal quotations omitted).

Plaintiff argues the judge failed to substantiate his decision not to deviate from the child support guidelines. This argument lacks merit and is flawed because the guidelines establish a rebuttable presumption of support. "A rebuttable presumption means that an award based on the guidelines is assumed to be the correct amount of child support unless a party proves to the court that circumstances exist that make a guidelines-based award inappropriate in a specific case." <u>Ordukaya v. Brown</u>, 357 N.J. Super. 231, 239 (App. Div. 2003) (quoting <u>Current N.J. Court Rules</u>, Appendix IX-A to <u>R.</u> 5:6A, ¶ 2).

There must be a showing of good cause to deviate from the guidelines.

Rule 5:6A sets forth the elements of good cause:

> Good cause shall consist of (a) the considerations set forth in Appendix IX-A, or the presence of other relevant factors which may make the guidelines inapplicable or subject to modification, and (b) the fact that any injustice would result from the application of the guidelines. In all cases, the determination of good cause shall be within the sound discretion of the court.
>
> [Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 2, www.gannlaw.com (2024).]

Here, plaintiff offered nothing to rebut the presumption to follow the guidelines.

The record shows the judge used the correct annual income for each party based upon the evidence and financial information presented at trial. Because there was no showing of good cause to deviate from the guidelines, the judge did not abuse his discretion and complied with the mandate required by Rule 5:6A.

Moreover, the judge in his reconsideration decision denied plaintiff's motion to recalculate the child support amount to include the company payout defendant received without prejudice. Plaintiff can make an application to modify the child support award with this subsequently obtained information. We discern no reversible error.

26

IV.

"[O]ur 'standard of review on a motion for reconsideration is deferential.'" Castano v. Augustine, 475 N.J. Super. 71, 78 (App. Div. 2023) (quoting Hoover v. Wetzler, 472 N.J. Super. 230, 235 (App. Div. 2022)).  Reconsideration is only appropriate in "that narrow corridor in which either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence."  Triffin v. SHS Group, LLC, 466 N.J. Super. 460, 466 (App. Div. 2021) (alterations in original) (quoting Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996)).

We consider whether the court acted in an "arbitrary, capricious, or unreasonable manner," which "is the least demanding form of judicial review." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990); see, e.g., State v. Steele, 92 N.J. Super. 498, 507 (App. Div. 1966) ("If the trial judge misconceives the applicable law or misapplies it to the factual complex, in total effect the exercise of legal discretion lacks a foundation and becomes an arbitrary act;" finding that the appellate court does not need to give the usual deference where the trial court's decision is arbitrary).

A-0310-22

"Alternatively, if a litigant wishes to bring new or additional information to the [c]ourt's attention which it could not have provided on the first application, the [c]ourt should, in the interest of justice (and in the exercise of sound discretion), consider the evidence." Cummings, 295 N.J. Super. at 384 (quoting D'Atria, 242 N.J. Super. at 401 (cautioning against "repetitive bites at the apple")).

The judge reviewed the arguments plaintiff presented on reconsideration. In his careful analysis, the judge considered plaintiff's arguments and denied relief, noting reconsideration is not "a vehicle to bring to the court's attention evidence that was available but not presented in connection with initial argument," citing Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002). The judge did not err or fail to appreciate the evidence. Cummings, 295 N.J. Super. at 384. And, plaintiff may file a post-judgment motion to recalculate child support as stated.

V.

Finally, plaintiff argues the judge erred in awarding partial counsel fees to defendant. She asserts the judge paid short shrift to Rules 5:3-5(c), 4:42-9. and RPC 1.5(a). The judge acknowledged defendant was the breadwinner with his income being $165,000 annually and plaintiff's income being $55,000

annually. The judge found plaintiff did not proceed in bad faith. In his decision, the judge noted that plaintiff incurred $148,068.50 in attorney's fees in pursuing this action and defendant incurred $158,669.50 in legal fees and costs opposing her claim.

Counsel fee determinations, "rest[] within the sound discretion of the trial judge." Gotlib v. Gotlib, 399 N.J. Super. 295, 314-15 (App. Div. 2008) (quoting Loro v. Colliano, 354 N.J. Super. 212, 227 (App. Div. 2002)). "We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

Generally, "the party requesting the fee award must be in financial need and the party paying the fees must have the financial ability to pay, and if those two factors have been established, the party requesting the fees must have acted in good faith in the litigation." J.E.V. v. K.V., 426 N.J. Super. 475, 493 (App. Div. 2012) (citing Guglielmo v. Guglielmo, 253 N.J. Super. 531, 545 (App. Div. 1992)). When both parties have a "sufficient ability to satisfy [their] attorney's fee obligation, and neither . . . proceeded in bad faith," the court may justifiably

deny the award of counsel fees.  Reese, 430 N.J. Super. at 586. The court also considers the following factors:

(1) the financial circumstances of the parties;

(2) the ability of the parties to pay their own fees or to contribute to the fees of the other party;

(3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial;

(4) the extent of the fees incurred by both parties;

(5) any fees previously awarded;

(6) the amount of fees previously paid to counsel by each party;

(7) the results obtained;

(8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and

(9) any other factor bearing on the fairness of an award.

[R. 5:3-5(c).]

A trial court's failure to consider the appropriate factors, make the required findings, and state its conclusions of law, constitutes a clear abuse of discretion.  See Saffos v. Avaya, Inc., 419 N.J. Super. 244, 271 (App. Div. 2011).  Ordinarily, the purpose of a counsel fee award in a matrimonial action

is to equalize the relative financial resources of the parties. J.E.V., 426 N.J. Super. at 493 (citing Kelly v. Kelly, 262 N.J. Super. 303, 307 (Ch. Div. 1992)).

"Simple omnibus references to the rules without sufficient findings to justify a counsel fee award makes meaningful review of such an award impossible . . . ." Loro, 354 N.J. Super. at 228. If the court performs its obligation under the statute and rules, and "there is satisfactory evidentiary support for the trial court's findings, 'its task is complete and [a reviewing court] should not disturb the result, even though it . . . might have reached a different conclusion were it the trial tribunal.'" Reese, 430 N.J. Super. at 568 (quoting Beck v. Beck, 86 N.J. 480, 496 (1981)). Conversely, a remand is appropriate if the trial court fails to adequately explain an award or denial of counsel fees. See Giarusso v. Giarusso, 455 N.J. Super. 42, 54 (App. Div. 2018) (citing Loro, 354 N.J. Super. at 227-28).

Here, the judge awarded counsel fees without considering all relevant factors. In its written statement of reasons, the judge simply stated, "[t]he results obtained in this case would strongly support [defendant's] request for a fee award" and noted the discrepancies in the parties' incomes. The judge did not make detailed findings under the Rules 5:3-5(c), 4:42-9, and RPC 1.5(a). Thus, we are constrained to reverse and remand for the judge to consider the requisite

factors and conduct the appropriate analysis. We have no opinion on the outcome of the counsel fee decision.

Affirmed in part, reversed and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION